FILED

January 5, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:19 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| JAMES ADAMS | ) | Docket No.: 2015-05-0418 |
| Employee, | ) | |
| v. | ) | State File Number: 51602-2015 |
| PRISTINE BUILDING SERVICES | ) | |
| Employer, | ) | Judge Dale Tipps |
| And | ) | |
| NORGUARD INS. CO. | ) | |
| Insurance Carrier/TPA. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned workers' compensation judge on December 22, 2015, on the Request for Expedited Hearing filed by the employee, James Adams, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is the compensability of Mr. Adams' low back injury and his entitlement to medical and temporary disability benefits. The central legal issue is whether Mr. Adams is likely to establish he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court finds Mr. Adams is not entitled to the requested medical and temporary disability benefits at this time.

### History of Claim

Mr. Adams is a fifty-nine-year-old resident of Rutherford County, Tennessee. He worked as a floor technician for Pristine, cleaning and maintaining floors at various locations. Although he suffered from several serious medical conditions, he testified that he never had a back injury until June 17 or 18, 2015.[1] On that date, Mr. Adams went to Pristine's Nashville office and saw a notice instructing him to clock in and travel to Clarksville, Tennessee. When he got to Clarksville, he and a co-worker were put to work building a stone wall at the home of Pristine's owner. Although they clocked in before going to Clarksville, they were later told they could not be paid by Pristine for that work.

---

[1] Neither of the parties could establish the precise day of the event. For convenience, the Court will refer to the first date of injury as June 17, 2015.

1

Instead, the owner's husband paid them in cash.

While building the wall, Mr. Adams stepped back over some rocks and fell on the left side of his back. He was unable to get up without help from his co-worker. He did not immediately report the injury because he did not think it was serious. When his condition worsened, he notified the office workers at Pristine and Devean Mangrum, the owner's son.

Mr. Adams continued to work, even though he was hurting. On June 24, 2015, he injured his back while lifting a floor buffer into his van and again when he tried to take the buffer out. After a short delay, he reported this injury to Mr. Mangrum as well. Mr. Mangrum again filled out workers' compensation paperwork and gave Mr. Mangrum a panel of physicians, from which Mr. Adams selected Concentra Medical Centers.

Medical records show that Mr. Adams' primary care physicians were Dr. Moses Swauncey and FNP Lucinda Motley, at Jackson Square Family Healthcare. Mr. Adams first saw Ms. Motley on November 4, 2014, complaining of long-standing bilateral knee pain. Among other medical conditions, Ms. Motley noted he had a tender lumbar spine with no radiation. This notation reappears in subsequent notes through April 28, 2015. (Ex. 1.)

On May 27, 2015, Mr. Adams reported to Ms. Motley that he had pain in his lower back going into his legs. He denied having "back issues that he knows of." Ms. Motley ordered x-rays. Mr. Adams returned on June 26, 2015, complaining of constant shooting pain in his legs. Ms. Motley ordered a lumbar MRI. *Id.*

Dr. Joseph Speake saw Mr. Adams at Concentra on July 8, 2015, for back pain that began when Mr. Adams was unloading a machine from a truck on June 24, 2015. Dr. Speake examined Mr. Adams and assessed lumbar strain. He ordered physical therapy and noted he would try to get Mr. Adams' MRI results. (Ex. 2.)

On referral from Ms. Motley, Mr. Adams saw neurosurgeon, Dr. William Schooley, on July 10, 2015. Mr. Adams reported lumbar pain down his left hip and leg that began when he fell and landed on a rock while working at his employer's home. He described a second incident while he was lifting a buffer. Dr. Schooley noted the MRI showed mild spondylosis at the bottom two levels of the spine. He diagnosed thoracic spine pain and prescribed a Medrol Pak. (Ex. 4.)

Mr. Adams returned to Concentra on July 20, 2015, and saw Dr. Frank Thomas. He reported injuring his back when he fell and landed on a rock. He also told Dr. Thomas he subsequently reinjured his back while unloading a truck. Mr. Adams described burning and shooting pain that radiated to the lateral aspects of both feet. Dr. Thomas noted the MRI did not show definite nerve impingement and diagnosed

contusion of lower back and lumbar strain. He referred Mr. Adams to a neurosurgeon. (Ex. 2.)

On September 8, 2015, Pristine's attorney sent Dr. Thomas a letter and some of Ms. Motley's office notes. The letter asked, "Based upon a better understanding of Mr. Adams' medical history, do you agree that Mr. Adams' lower back problems for which you evaluated him *did not* arise primarily out of his employment considering all potential causes?" (Emphasis in original.) Dr. Thomas checked the "yes" response and signed the letter on October 7, 2015. (Ex. 3.)

Mr. Adams filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Adams filed a Request for Expedited Hearing, and this Court heard the matter on December 22, 2015.

At the Expedited Hearing, Mr. Adams asserted he is entitled to medical benefits for an injury or repetitive motion condition arising primarily out of and in the course and scope of his employment. He contended the medical records establish he had no significant back condition or any related medical restrictions before the two workplace incidents. Because he now has restrictions, this proves that those incidents caused a compensable injury.

Pristine countered that Mr. Adams is not entitled to any workers' compensation benefits because he failed to present sufficient evidence that his injury arose primarily out of his employment.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). In general, an employee bears the burden of proof on all prima facie elements of his or her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in

3

the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The parties dispute whether Mr. Adams suffered a single injury, two separate injuries, a gradual injury, or an aggravation of a preexisting condition. Pristine also argues Mr. Adams' injury of June 17, 2015, is not compensable because he was a casual employee on that date, pursuant to Tennessee Code Annotated section 50-6-106(2). The medical evidence submitted to date makes it unnecessary to resolve these issues at this time.

Mr. Adams selected Concentra Medical Centers from a panel of physicians provided by Pristine, who provided treatment with Dr. Thomas at Concentra. Therefore, Tennessee Code Annotated section 50-6-102(13)(E) (2014) establishes a rebuttable presumption of correctness for Dr. Thomas' causation opinion. That opinion stated that Mr. Adams' lower back problems did not arise primarily out of his employment considering all potential causes.

Mr. Adams objected to Dr. Thomas' opinion on a number of grounds. First, he argued that Dr. Thomas' opinion letter was hearsay. Tennessee Compilation Rules & Regulations 0800-02-21-.16(6)(b) provides, "[a]ll medical records signed by a physician . . . shall be admissible." The causation questionnaire submitted by Pristine bears Dr. Thomas' signature. Accordingly, Mr. Adams' hearsay objection is overruled, and the document is admissible.

Mr. Adams also objected to Dr. Thomas' opinion because it is a short, unexplained checkmark response to a letter containing incomplete or misleading information. The letter sent to Dr. Thomas shows that Pristine provided him with three medical records from FNP Motley and a copy of the MRI report. While the Court agrees that Dr. Thomas' response is void of detail that might be better developed in a deposition, the lack

of detail goes to the weight of the evidence, not its admissibility.[2]

Next, Mr. Adams objected to Dr. Thomas' response on the best evidence rule. "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or the Tennessee Legislature." Tenn. R. Evid. Rule 1002. However, Tennessee Rule of Evidence 1003 provides: "A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." Nothing on the face of the letter raises any question as to its authenticity. It is addressed to Dr. Thomas and bears what appears to be his signature. It was faxed to Pristine's attorney on the date it was signed. Further, Mr. Adams did not produce any evidence of fraud or any information suggesting Dr. Thomas did not sign the original. His objection is overruled. *See Bolton v. State,* 617 S.W.2d 909 (Tenn. Crim. App. 1981).

Finally, Mr. Adams objected to the letter on the ground that it made Pristine's attorney a witness in the proceedings, in violation of Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.7. The Court finds this argument without merit. Counsel for Pristine has a statutory right to contact authorized medical providers. Tenn. Code Ann. § 50-6-204(2)(A) (2014). Further, Mr. Adams has presented no authority in support of the proposition that merely asking the doctor a question, whether in a deposition or a letter, makes the questioner a witness.

Mr. Adams' concerns with Dr. Thomas' opinion are understandable, but he offered no other medical proof addressing causation. Therefore, as a matter of law, he has not come forward with sufficient evidence from which this Court may conclude he is likely to prevail at a hearing on the merits. His request for medical and temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Adams' claim against Pristine and its workers' compensation carrier for the requested medical and temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on February 2, 2016, at 9:00 a.m.

   **ENTERED this the 5th day of January, 2016.**

---

[2] Counsel for Mr. Adams also suggested that the Court should disregard the letter because it conflicts with Dr. Thomas' prior findings. A review of Dr. Thomas' July 20, 2015 office note shows that, in fact, he gave no medical opinion at that time regarding the cause of Mr. Adams' back condition. Even if he had, the letter asked him for his opinion, *in view of the additional medical history*.

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Records from Jackson Square Family Healthcare
2. Records from Concentra Medical Centers
3. September 8, 2015 letter to Dr. Thomas
4. Records from Nashville Neurosurgery Group
5. June 29, 2015 MRI report
6. Form C-23 Notice of Denial
7. Form C-42 Choice of Physician
8. Form C-41 Wage Statement
9. First Report of Injury
10. Separation Notice
11. Affidavit of Devean Mangrum
12. Affidavit of Christie Huseman


Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Medical and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 5th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Linda Nicklos | | | X | lindasuenicklos@gmail.com |
| Allen Callison | | | X | ACallison@eraclides.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**